UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN MARK KELTY,

                Petitioner,                         Case No. 19-cv-12774
                                                            Hon. Matthew F. Leitman

v.

GARY MINIARD,

                Respondent.

_____/

**ORDER (1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 9), (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Steven Mark Kelty is a state prisoner in the custody of the Michigan Department of Corrections. In 2016, a jury in the Livingston County Circuit Court convicted him of operating a motor vehicle with a suspended or revoked license causing death, Mich. Comp. Laws § 257.904(4), and operating a motor vehicle with the presence of a controlled substance in his body causing death, Mich. Comp. Laws § 257.625(4). The state trial court then sentenced Kelty to a term of imprisonment of fifteen to thirty years.

On September 23, 2019, Kelty, filed a *pro se* petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) In his petition, Kelty seeks relief on the following grounds: (1) newly-discovered evidence shows that he is actually innocent

and insufficient evidence was presented to show his actions were the proximate cause of the victim's death; (2) the prosecutor committed misconduct; (3) trial counsel was ineffective; (4) appellate counsel was ineffective; (5) he was denied his right to present the defense of causation and the jury instructions regarding causation were insufficient; and (6) he was denied his right to present a defense because he was not allowed to argue that there was an intervening, superseding cause of the victim's death.

The Court has carefully reviewed the petition and concludes that it does not state a claim upon which relief may be granted. Therefore, the Court **DENIES** the petition. The Court also **DENIES** Kelty a certificate of appealability, but it **GRANTS** him leave to proceed *in forma pauperis* on appeal.

## I

The Michigan Court of Appeals summarized the circumstances giving rise to Kelty's convictions as follows:

> Kelty's convictions arose from a collision between a motorcycle and Kelty's Chevrolet Blazer on an early morning in September 2014. According to an eyewitness, the motorcycle turned right from Figurski Road into a northbound lane of Latson Road. Kelty was driving his Blazer southbound on Latson Road, intending to make a left turn onto Figurski Road, when he turned too early and collided nearly head-on with the motorcycle. The motorcyclist was killed.

> Kelty conceded at trial that he was operating the vehicle with a suspended or revoked license and that he had THC in his system at the time of the collision. Whether Kelty's conduct was a proximate cause of the motorcyclist's death was a principal issue at trial. The parties do not dispute that the charged offenses did not involve an element of intoxication.

*People v. Kelty*, 2017 WL 6346061, at *1 (Mich. Ct. App. Dec. 12, 2017).

A jury in Livingston County Circuit Court convicted Kelty as set forth above. The state trial court then sentenced him as a third-offense habitual offender to 15 to 30 years imprisonment for each conviction. *See id. Kelty*

Kelty appealed his convictions and sentence to the Michigan Court of Appeals.  He claimed: (1) ineffective assistance of counsel and evidentiary errors unfairly influenced the jury's decision regarding proximate cause; (2) the trial court unfairly allowed a witness to give a lay opinion regarding the cause of the collision; and (3) the sentence violated the principle of proportionality.  The Michigan Court of Appeals affirmed Kelty's convictions and sentence. *See id.* Kelty then sought leave to appeal in the Michigan Supreme Court, and that court denied leave. *See People v. Kelty*, 911 N.W.2d 705 (Mich. 2018).

On September 23, 2019, Kelty filed a petition for a writ of habeas corpus in this Court. (*See* Pet. ECF No. 1.)  He also filed a motion to stay the proceeding so that he could return to state court and exhaust additional claims.  (*See* Mot., ECF No.

3.)  The Court granted the motion and administratively closed the case.  (*See* Order, ECF No. 4.)

Kelty then filed a motion for relief from judgment in the state trial court claiming: (1) he is actually innocent; (2) the prosecution abused its charging authority; (3) trial and appellate counsel were ineffective; (4) the prosecution did not provide timely notice of the third habitual offender enhancement; and (5) the jury improperly instructed the jury that Kelty voluntarily decided to drive knowing that he had THC in his body. (*See* St. Ct. Mot. ECF No. 15-22, 15-23, 15-24, 15-25.) The trial court denied the motion. (*See* 8/16/2019 St. Ct. Order, ECF No. 15-26.) The trial court also denied Kelty's motion for reconsideration. (*See* 9/11/2019 St. Ct. Order, ECF No. 15-28, PageID.2651.)   The Michigan Court of Appeals and Michigan Supreme Court thereafter denied Kelty's applications for leave to appeal. *See People v. Kelty*, No. 352571 (Mich. Ct. App. May 22, 2020); *People v. Kelty*, 949 N.W.2d 705 (Mich. Oct. 27, 2020).

Kelty then returned to this Court and filed a motion to re-open this proceeding and amend his habeas petition. (*See* Mot., ECF No. 9.)  The Court granted the motion, re-opened this case, and directed Respondent to file an answer to the petition. (*See* 1/12/2021 Order, ECF No. 10.)  Kelty later filed a supplemental petition raising an additional claim, which the Court later granted. (*See* Mot., ECF No. 11; Order, ECF No. 20.)

Kelty seeks habeas relief on the following claims:

(1) he is actually innocent based on newly-discovered evidence and there was insufficient evidence that his operation of a motor vehicle was the proximate cause of the victim's death;

(2) the prosecutor engaged in misconduct by overcharging him;

(3) his trial counsel was ineffective;

(4) his appellate counsel was ineffective;

(5) the trial court prevented him from presenting a causation defense and improperly instructed the jury regarding proximate causation; and

(6) he was prevented from presenting a causation defense because the court prevented him from arguing that there was an intervening, superseding cause of the victim's death.

Respondent has filed an answer and supplemental answer. (*See* ECF Nos. 14, 17.) Kelty filed two reply briefs. (*See* ECF Nos. 18, 19.) The Court has reviewed all of the parties' submissions and is now prepared to rule on Kelty's habeas claims.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

5

States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III

### A

The Court begins with Kelty's claim that new reliable evidence demonstrates his actual innocence and his related claim that the evidence presented at trial was insufficient to support his convictions.  Kelty first raised these claims in the motion for relief from judgment that he filed in the state trial court.  For the reasons explained below, Kelty is not entitled to federal habeas relief on either claim.

### 1

In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court held that a claim of actual innocence may provide "'a gateway through which a habeas petitioner must pass to have [an] otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).  But the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on an independent actual innocence claim." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2014); *see also Dist. Attn'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71

(2009) ("Whether such a federal right [to be released upon proof of actual innocence] exists is an open question."). However, the United States Court of Appeals for the Sixth Circuit Court has held that freestanding claims of actual innocence are not cognizable on federal habeas review absent independent allegations of constitutional error at trial, which Kelty has not alleged here. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).[1] Habeas relief, therefore, is not available for Kelty's freestanding actual innocence claim.

Even if a freestanding claim of actual innocence were cognizable in these proceedings, Kelty's claim would still fail because he has not shown that he is actually innocent. The threshold showing for an actual innocence claim, if one were cognizable, "would necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). More specifically, a freestanding claim of actual innocence "would have to fail unless the federal habeas court is itself convinced that [new reliable evidence submitted by the petitioner] unquestionably establish[es his] innocence." *Schlup*, 513 U.S. at 317. Kelty has not met that considerable burden here.

---

[1] *See also Toliver v. Forshey*, 2023 WL 355428, at *4 (6th Cir. Jan. 6, 2023) ("Freestanding claims of actual innocence are not cognizable on habeas review in a non-capital case."); *Curry v. Gray*, 2022 WL 17741585, at *3 (6th Cir. Oct. 25, 2022) (explaining that "reasonable jurists would not debate the district court's conclusion that Curry's freestanding actual-innocence claim is not cognizable in federal habeas proceedings.").

To support his claim of actual innocence, Kelty identifies eight "new" items of evidence.  The Court will consider each "new" piece of evidence in turn.  First, Kelty cites Michigan State Police Trooper Sivy's UD10 Police report which showed that the victim did not have a motorcycle endorsement on his license.  Kelty's trial counsel cross-examined Trooper Sivy extensively about the contents of the UD10 report and Sivy referred to it multiple times to refresh her recollection.  The report was not admitted into evidence and Sivy was not asked whether the victim had a motorcycle endorsement.  But Kelty has not explained how the victim's lack of a motorcycle endorsement could possibly establish his (Kelty's) actual innocence.

Next, Kelty cites an accident diagram generated by Michigan State Police Sergeant Avery.  It appears that the diagram was admitted into evidence during Avery's testimony. (*See* ECF No. 15-18, PageID.1767.)  Avery testified as to its authenticity and how he gathered the date and measurements reflected on the diagram. (*See id.*, PageID.1764-1767.)  Kelty claims that the diagram/photograph was "fabricated."  But he offers no support or explanation for that contention, nor does he explain how, even if the diagram was fabricated, how that would demonstrate his actual innocence.

Third, Kelty claims that the prosecutor relied on perjured testimony and fabricated evidence.  As discussed in detail below, Kelty has not shown that the

prosecutor presented false testimony or fabricated evidence. Kelty's conclusory assertion fails to support an actual innocence claim.

Fourth, Kelty maintains that a photograph of the SUV and rust/debris on the pavement supports his innocence. Multiple photographs were admitted into evidence, including several described as depicting rust and dirt that had fallen from the SUV. (*See* ECF Nos. 15-15, PageID.1278, 1277-78; 15-19, PageID.1883-1884.) The Court cannot discern whether the photograph Kelty identifies was admitted at trial. But even if it was not, Kelty fails to explain in what way it was superior to, or different from, the admitted photographs or how it shows his actual innocence.

Fifth, Kelty identifies a photograph of the speedometer on the victim's motorcycle stopped at 58 miles-per-hour. This photograph was admitted into evidence.[2] In his reply brief, Kelty concedes that the photograph was admitted at trial but argues that an FBI bulletin regarding speedometers that was not admitted constitutes newly-discovered evidence of innocence. (*See* ECF No. 18, PageID.3306.) The Court discusses the substance of the FBI bulletin below in the context of Kelty's ineffective assistance of trial counsel claim. As explained there, the bulletin does not demonstrate Kelty's actual innocence.

---

[2] Kelty asserts that the prosecutor removed this photograph from the evidence packet when the court granted him access to the pictures during a lunch break to allow him to prepare for cross-examination. (*See* Kelty Reply, ECF No. 18, PageID.3306.) Kelty provides no support for this conclusory allegation that the prosecutor engaged in subterfuge or misconduct.

Sixth, Kelty cites to a hand-drawn accident diagram that he created.  But that diagram is of little use in supporting an actual innocence claim because "a reasonable juror surely could discount [Kelty's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007).  At best, Kelty's diagram depicts his perception of the crash; it does not represent new evidence of innocence.

Seventh, Kelty references "various affidavits located in the Appendix." (ECF No. 9, PageID.187.)  But no affidavits are attached to the petition and Kelty does not specify to what appendix he refers.  The Court presumes that he intends to reference his own affidavits contained in an appendix filed in state court. (*See* ECF No. 15-28, PageID.2586-2589, 2608-2611.)   However, those affidavits do not contain new evidence to support Kelty's innocence claim.  Instead, like his own hand-drawn diagram, they are self-serving and "carr[y] little weight in furtherance of showing actual innocence." *Freeman v. Trombley*, 483 F. App'x 51, 59 (6th Cir. 2012).

Finally, Kelty claims that his trial counsel did not subject the prosecution's case to meaningful adversarial testing, but that does not establish that he is actually innocent of his crimes.  In any event, as discussed below, Kelty has failed to show that his trial counsel rendered ineffective assistance.

For all of these reasons, Ketly is not entitled to habeas relief on his freestanding claim of actual innocence.

**2**

Kelty also claims that the prosecutor presented insufficient evidence to show that he was the proximate cause of the victim's death. As noted above, Kelty first raised this claim in his motion for relief from judgment in the state trial court. And while that court addressed Kelty's related actual innocence claim, the court did not review the sufficiency of the evidence. Because that court did not decide the merits of this claim, the Court reviews the claim *de novo*. For the reasons explained below, Kelty is not entitled to habeas relief on this claim.

Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The prosecution need not rule out every hypothesis except that of guilt. *Id.* at 326. The focus is not "on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Courts must apply the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.

The elements of operating a vehicle while license is suspended or revoked causing death under Michigan law are: (1) defendant operated a motor vehicle; (2)

11

defendant operated the motor vehicle on a highway or other place open to the general public; (3) at the time that defendant operated the motor vehicle, his license was suspended or revoked; and (5) defendant's operation of the vehicle caused the victim's death. *See* Mich. Comp. Laws §§ 257.904(1) and (4).  The elements of operating a vehicle with a controlled substance in his body causing death under Michigan law are: (1) defendant operated a motor vehicle; (2) defendant operated the motor vehicle on a highway or other place open to the general public; (3) while operating the vehicle, defendant had any amount of a controlled substance in his body, (4) that the defendant voluntarily decided to drive knowing that he had consumed or used a controlled substance; and (5) that defendant's operation of the vehicle caused the victim's death. *See* Mich. Comp. Laws § 257.625(4).

Kelty maintains that, for both offenses, the prosecutor failed to prove the causation element beyond a reasonable doubt.  Under Michigan law, the causation element of a criminal offense consists of factual and proximate causation. *See People v. Feezel*, 783 N.W.2d 67, 73-74 (Mich. 2010) (citing *People v. Schaefer*, 703 N.W.2d 774 (Mich. 2005)).  "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id.* at 74-75. Proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id.*  Proximate cause means that "[t]he victim's injury must be a 'direct

and natural result' of the defendant's action." *Schaefer*, 703 N.W.2d at 785.  "If the

finder of fact determines that an intervening cause supersedes a defendant's conduct

'such that the causal link between the defendant's conduct and the victim's injury

was broken,' proximate cause is lacking and criminal liability cannot be imposed."

*Feezel*, 783 N.W.2d at 74 (quoting *Schaefer*, 703 N.W.2d at 785).  The Michigan

Supreme Court has explained "intervening cause" in this way:

> Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability ... Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. .... In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to "break the causal chain between the defendant and the victim" because it is not reasonably foreseeable. ... Gross negligence, however, is more than an enhanced version of ordinary negligence. ... "It means wantonness and disregard of the consequences which may ensue...." *People v. Barnes*, 182 Mich. 179, 198, 148 N.W. 400 (1914).[ ]  "Wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results" and usually "suggests a greater degree of culpability than recklessness...." Black's Law Dictionary (8th ed.).

*Feezel*, 783 N.W.2d at 75 (internal citations omitted).

Here, viewing the evidence in the light most favorable to the prosecution, a

rational jury could have concluded that there was sufficient evidence of factual and

proximate causation.  Eyewitness Phillip Wimp was driving behind the victim on

the morning of the accident.  Wimp observed the victim traveling at a reasonable

13

rate of speed and did not believe either the victim's motorcycle or his own vehicle exceeded the posted speed limit of 25 miles per hour. (*See* ECF No. 15-15, PageID.1028.)  Wimp testified that while the victim did not stop at the stop sign before beginning his turn, Kelty's Blazer began its turn too soon so that the Blazer was headed toward the wrong lane of traffic on Figurski Road. (*See id.*, PageID.1037-1038, 1143-1144.)  Wimp noted that, if the Blazer had continued at that turn angle (*i.e.,* if it had not collided with the motorcycle), it would have gone over the curb and sidewalk in the wrong lane of traffic on Figurski. (*See id.*)

A rational jury could have also credited the testimony of several other witnesses who supported the prosecution's version of events.  Michigan State Trooper Olivia Sivy was the first law enforcement officer to arrive at the scene.  Her assessment of the scene supported Wimp's testimony that Kelty turned too early. (*See id.*, PageID.1190-1191.)  Greg Galarneau, a Michigan State Police accident investigator, also testified that based on his review of the accident scene, Kelty turned too soon and was headed for the wrong lane of traffic on Figurski Road.  (*See id.*, PageID.1284-1287.)  The State's accident reconstruction expert, Allan Avery, further testified that the Blazer was north of the intersection when the accident occurred, meaning that Kelty turned too soon and was in the oncoming lane of traffic when the accident occurred. (*See* ECF No. 15-17, PageID.1562-1563.)

When reviewing this claim. this Court does not assess the correctness of the verdict or whether the Court would have found that the victim's running of the stop sign or the victim's speed constituted an intervening cause of his death.  Instead, the Court decides only whether a rational juror could have concluded that the victim's running of the stop sign and speed constituted ordinary negligence and, therefore, were not, together, an intervening cause breaking the causal connection between Kelty's actions and the victim's death.  Viewing the evidence in the light most favorable to the prosecution, a rational juror could have concluded that Kelty's actions were the proximate cause of the victim's death because multiple witnesses testified that Kelty started his turn too soon and was in the wrong lane of traffic when he struck the motorcycle.  A rational juror could also have found that the victim's running the stop sign and the motorcycle's speed constituted ordinary negligence that was insufficient to break the causal chain between Kelty's actions and the accident.  Kelty is therefore not entitled to federal habeas relief on this claim.

### B

Kelty next asserts that he was denied his right to a fair trial because the prosecutor committed misconduct.  Kelty first raised this claim in his motion for relief from judgment in the state trial court and that court rejected it.  The Court will review both of Kelty's examples of prosecutorial misconduct separately.  Neither entitle him to federal habeas relief.

**1**

First, Kelty claims the prosecutor knowingly offered perjured testimony at trial.  More specifically, he asserts that "[t]he material facts in this case are quite telling when reviewing the obvious and false perjured testimonies of Mr. Wimp, Trooper Sivy, Sgt. Avery, and Mr. Brown, all acting in concert with Assistant Prosecutor Rose and Defense Counsel Nalley.  There is no other answer."   (ECF No. 9, PageID.191.)  The state trial court rejected the claim because Kelty presented no evidence to substantiate his claim of a conspiracy to present perjured testimony. (*See* ECF No. 15-2, PageID.534.)

Kelty has not shown that the state trial court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. A prosecutor's conduct violates a criminal defendant's constitutional rights only if the conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  The "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates a defendant's due process rights. *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).  To prevail on such a claim, a defendant must show that the prosecution knowingly presented false testimony that materially affected the proceeding. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).  But "mere inconsistencies" in the

testimony are not enough. *Id.* A defendant must prove that the testimony was "indisputably false." *Id.* at 822-23.

Kelty has not met that burden here. He offers only suspicions that witnesses perjured themselves with the prosecutor's knowledge and encouragement. He maintains that witnesses must have been motivated to lie because the victim was a former police officer. But Kelty's unsupported allegations of collusion and perjury fall far short of establishing that the prosecutor knowingly presented perjured testimony or that the state court's decision was unreasonable. For all of these reasons, Kelty has not shown that the state trial court unreasonably denied this claim.

**2**

Next, Kelty claims that the prosecutor abused his charging authority by charging him with operating a motor vehicle while license suspended or revoked causing death, Mich. Comp. Laws § 257.904(4), and operating a motor vehicle with the presence of a controlled substance causing death, Mich. Comp. Laws § 257.625(4). After reciting the appropriate standard of review, the trial court held that the prosecution did not abuse its charging discretion.

Kelty has not shown that the state trial court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. A prosecutor has broad discretion in deciding what charges to pursue, and a prosecutor's charging decisions are generally not subject to review by the courts.

"[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  The Court sees no indication in the record that the prosecutor's charging decision was vindictive or based on any impermissible factors.  The trial court's denial of this claim was therefore not unreasonable.

## C

### 1

Kelty next argues that trial counsel was ineffective in the following ways: (1) failing to explain to him (Kelty) the full benefit of testifying in order to establish actual innocence; (2) failing to object to the prosecution's presentation of a "fabricated ... computer generated diagram of the fatal accident;" (3) failing to allow the defense expert to challenge the State's accident reconstructionist or give his own opinion as to who was at fault; (4) failing to inform the jury that the victim did not have a motorcycle endorsement on his license; (5) failing to offer footage from a Meijer store security camera; (6) failing to offer material facts as to actual cause; and (7) failing to offer facts showing how fast the victim's motorcycle was actually travelling.  Kelty also says that the cumulative effect of his trial counsel's errors deprived him of a fair trial.

18

Kelty raised these claims of ineffective assistance in his motion for relief from judgment that he filed in the state trial court, and that court rejected them.  It held that the acts or omissions Kelty identified "fell within the scope of reasonable professional judgment" and were "presumed to be matters of trial strategy." (8/16/2019 St. Ct. Order, ECF No.15-26, PageID.2295.)   The trial court further determined that counsel's failure to call witnesses did not deprive Kelty of a substantial defense. (*See id.*)   Finally, the trial court held that counsel was not ineffective for failing to object to certain evidence because an objection would have been futile. (*See id.*)   As explained below, Kelty has failed to show that the trial court's resolution of his ineffective assistance of counsel claims was unreasonable.

## 2

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  To show prejudice under *Strickland*, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to both the deferential

*Strickland* standard described above and to the deferential standard of AEDPA. *See Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing Strickland standard in context of habeas petition). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal punctuation and citation omitted).

### 3

First, Kelty argues that his trial counsel performed deficiently when counsel failed to explain to him (Kelty) that testifying in his own defense would allow him to present an actual innocence defense. The record shows that Kelty consulted with his trial counsel before declining to testify and that he had been advised the decision was his. (*See* ECF No. 15-19, PageID.1935-1936.) Kelty maintains he did not understand the "full benefit" of testifying, but he has failed to specify exactly what he did not understand or how his counsel specifically should have advised him. Nor has shown that had he presented his own testimony in support of an actual innocence defense that there is a reasonable probability the outcome of his trial would have been different. For all of these reasons, Kelty has not shown the trial court's decision denying this claim was unreasonable.

**4**

Kelty next argues that his trial counsel performed deficiently when she did not object to the prosecution's presentation of a "fabricated ... computer generated diagram of the fatal accident." (ECF No. 9, PageID.194.)  The State's accident reconstructionist testified that he created a document showing his measurements from the crash scene digitally superimposed on an aerial photograph of the scene. (*See* ECF No.15-18, PageID.1765.)  The photograph was then admitted into evidence.

When the state court denied this component of Kelty's ineffective assistance claim, it held that any objection to this evidence would have been meritless. (*See* ECF No.15-26, PageID.2295.)  It therefore concluded that Kelty's trial counsel was not ineffective for failing to object to the evidence. (*See id.*)  Because a federal habeas court generally will "not second guess a state court's decision concerning matters of state law," the Court defers to the state court's evidentiary ruling.  *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001).  Moreover, Kelty fails to offer any evidence that the accident reconstructionist testified falsely about the exhibit or the measurements taken from the scene.  Finally, Kelty's trial counsel cross-examined the reconstructionist about his observations, calculations, and conclusions.  For all of these reasons, Kelty has not shown the state court's rejection of this claim was unreasonable.

**5**

Next, Kelty challenges his trial counsel's questioning of the defense's expert witness in accident reconstruction, Timothy Brown.  Kelty maintains that his trial counsel should have given Brown "the opportunity to fully challenge the fabricated" testimony of the State's accident reconstructionist or to give his opinion as to who was to blame for the accident. (*See* ECF No. 9, PageID.195.)  But Brown *did* testify that the area of impact occurred closer to the center line than the State's expert concluded.  This testimony supported the defense theory that Kelty was not operating in the opposing lane of traffic and, therefore, that Kelty was not the proximate cause of the victim's death.  Thus, Kelty's trial elicited testimony from the defense expert that was favorable to the defense on a key issue.  Moreover, Kelty has not provided any explanation as to what additional testimony his trial counsel could have elicited from Brown.  For all of these reasons, Kelty has not shown that the trial court's rejection of this claim was unreasonable.

**6**

Kelty next asserts that his trial counsel was ineffective because she did not inform the jury that the victim did not have a motorcycle endorsement on his license. Kelty gleans this information from the UD10 accident report prepared by Trooper Sivy.  The state court's denial of this claim was not unreasonable because Kelty has not rebutted the presumption that this was a matter of trial strategy.  The evidentiary

value of this evidence to the defense would have been minimal – the victim was not

charged with driving without a motorcycle endorsement and the evidence would not

have provided a meaningful defense to the elements of the charged offenses.  Thus,

the trial court did not unreasonably conclude Kelty's trial counsel was not ineffective

for failing to pursue this minimally beneficial line of questioning.

**7**

Next, Kelty maintains that his trial counsel was ineffective when counsel

failed to offer material exculpatory evidence, specifically footage from a Meijer

store's security camera.  Kelty insists that this footage would have established his

innocence.  But Kelty stated the following in an affidavit submitted in connection

with his motion for relief from judgment:

> I told [defense counsel] about the Meijer's Security
> Camera and she said she reviewed it but it did not show
> anything, yet I was not allowed to review it myself.

(10/16/2018 Affidavit of Steven Mark Kelty, ECF No. 15-28, PageID.2587.)

Kelty obtained the footage at some point after his trial and states it clearly

shows the victim running the stop sign. (*See* ECF No. 18, PageID.3305.)   But

whether the victim ran the stop sign was not a contested fact, so Kelty fails to show

how omission of the video prejudiced his defense.  Kelty's trial counsel counsel

therefore had a sound reason for not offering this evidence at trial, and the trial court

did not unreasonably deny this claim.

**8**

Kelty next claims that his trial failed to "proffer material facts as to the actual cause of causation." (*See* ECF No. 9, PageID.195.)  But Kelty has failed to show that the trial court's rejection of this claim was unreasonable. He has not specified what material facts were available but went unused by trial counsel, and the Court will not construct an argument on his behalf.  Kelty has therefore not shown that he is entitled to relief on this component of his ineffective assistance claim.

**9**

Kelty further argues that counsel should have offered evidence of the motorcycle's speed at the time of the accident. The record shows that Kelty's trial counsel offered such evidence by admitting a photograph of the motorcycle's speedometer which was stuck at 58 miles per hour.  But neither the prosecution nor defense expert witnesses believed that to be an accurate indicator of the motorcycle's speed.  Kelty maintains that counsel instead should have presented evidence that a stuck speedometer is a reliable indicator of speed if the speedometer is not stuck at zero.  In support of that contention, Kelty submits an abstract of a 1980 FBI law enforcement bulletin discussing speedometers.  (*See* ECF No. 18, PageID.3319.) The abstract states that "a direct speedometer reading of a stuck needle after an accident may not be reliable, particularly if the reading is at or near zero" and that an assessment of a stuck speedometer should be evaluated in the context of the entire

crash scene and all available evidence. (*Id.*)  But Kelty presents no offer of proof that any expert would have testified that the FBI bulletin supported a finding that the motorcycle was traveling 58 miles per hour at the time of the crash.  Thus, Kelty has failed to show that the trial court's rejection of this claim was unreasonable.

**10**

Finally, Kelty claims that the cumulative effect of counsel's errors denied him his right to a fair trial.  But it is not clearly established that "distinct constitutional claims" can "be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Thus, to the extent that this claim rests upon what are, in reality, a series of distinct claims, it is not cognizable on federal habeas review. *See Kennard v. Bauman*, 2024 WL 1917989, at *3 (6th Cir. May 1, 2024) (explaining that "[w]e have repeatedly held that the Supreme Court has not clearly established a cumulative-error theory of relief").  In any event, for the reasons explained above, Kelty has failed to show any meaningful deficiency in the representation provided by his trial counsel, and that failure is fatal to this claim.

**D**

In his fourth claim, Kelty alleges that his appellate counsel rendered constitutionally ineffective assistance in several ways.  Specifically, Kelty claims appellate counsel: (1) failed to explain the conflict of interest created by counsel's dual representation of Kelty and his brother Michael Kelty; (2) did not allow Kelty

to participate in developing issues to be raised to the Michigan Court of Appeals; (3) did not timely file Kelty's Michigan Court of Appeals brief and did not file a motion for new trial or *Ginther* hearing in the trial court; (4) failed to perfect the record that trial counsel was ineffective; (5) did not provide Kelty with transcripts of the proceedings; and (6) failed to assist Kelty with clerical assistance to ensure that Kelty's *pro per* supplemental brief conformed to the Michigan Court of Appeals' requirements.  (*See* ECF No. 9, PageID.348-349.)

Kelty first raised these claims in his motion for relief from judgment that he filed in the state trial court.  After reciting the relevant legal standards, the trial court denied the claims with the following summary finding: "Each of Defendant's listed acts or omissions [by appellate counsel] falls within the scope of reasonable professional judgment. ... Defendant failed to demonstrate that his counsel['s] performance fell below an objective standard of reasonableness."  (ECF No. 15-26, PageID.2295.)   Thus the claims were adjudicated on the merits and AEDPA deference applies.  *See Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). For the reasons explained below, Kelty has not shown that the trial court's rejection of these claims was not contrary to, or an unreasonable application of, clearly established federal law.

**1**

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). But a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* Omitting a claim on appeal "is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 582 U.S. 521, 533 (2017).

**2**

Kelty first argues that his appellate counsel was ineffective because counsel labored under a conflict of interest by simultaneously representing Kelty and his brother Michael. Michael testified at trial that his brother was unable to purchase a vehicle because he did not have a valid license. Michael, therefore, purchased the Blazer with his brother's money and registered the vehicle in his own name. Michael was subsequently charged with allowing an unlicensed person to operate a motor vehicle causing death in violation of Mich. Comp. Laws § 257.904. (*See* ECF No.

15-27, PageID.2345 n.1.)  Michael ultimately pleaded guilty to a misdemeanor and paid restitution to the victim's son. (*See* ECF No. 15-27, PageID.2427.)

A criminal defendant is entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978).  A claim that counsel was burdened by a conflict of interest is "analyzed under a modified version of the two-part *Strickland* test for ineffective assistance of counsel. *Moore v. Mitchell*, 708 F.3d 760, 777 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 692). First, the defendant must show that counsel "actively represented conflicting interests." *Cuyler v. Sullivan*, 446 U.S. 335, 340, 345-488 (1980).  An actual conflict of interest is one "that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). "[T]he *possibility* of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350 (emphasis supplied).  Where counsel is burdened by an actual conflict, prejudice is presumed.  *See id.* at 345-50.  To date, the Sixth Circuit has presumed prejudice only in cases where counsel's conflict arises from multiple concurrent representation. *See Mickens*, 535 U.S. at 172-74. *See also Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Cuyler* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies.")

It was not unreasonable for the state court to deny relief on this claim. Kelty's and Michael's defenses were not antagonistic and there is no evidence that "a conflict of interest actually affected the adequacy of his representation ...." *Cuyler*, 446 U.S. at 349. Kelty has therefore failed to show that the state court's denial of this claim was an unreasonable application of Supreme Court precedent.

### 3

Kelty next argues that appellate counsel was ineffective for failing to raise several claims on appeal. But Kelty fails to identify the omitted claims. To the extent that the omitted claims are those raised in this petition, Kelty cannot show that he was prejudiced by appellate counsel's failure to raise them because, as discussed in this order, the state court's denial of the claims was not unreasonable. To the extent Kelty asserts that his appellate counsel failed to raise other, unspecified claims, he is not entitled to relief. The Court cannot assess appellate counsel's decision to omit claims if Kelty fails to identify them. For all of these reasons, Kelty has failed to show that the trial court's denial of this claim was unreasonable.

### 4

In his third and fourth ineffective assistance of appellate counsel claims, Kelty asserts that his appellate counsel failed to file a motion for a new trial or for an evidentiary hearing which would have perfected his ineffective assistance of trial counsel claims.

As explained above, Kelty's ineffective assistance of trial counsel claims lack merit, and it is not ineffective assistance of counsel for an appellate lawyer to omit from appeal a meritless claim. *See Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002). The state court's denial of this claim therefore was not unreasonable.

**5**

Finally, Kelty claims that his appellate counsel failed to provide him with trial transcripts and failed to ensure that his *pro per* supplemental brief on appeal conformed to the Michigan Court of Appeals' requirements. There is no "constitutional right to self-representation on direct appeal from a criminal conviction." *Martinez v. Ct. of App. of Cal., Fourth App. Dist.*, 528 U.S. 152, 160, 163 (2000). Thus, appellate counsel cannot be deemed deficient when he or she does not provide a defendant with transcripts or help the defendant prepare or file a *pro per* supplemental brief. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). The trial court's denial of this claim, therefore, was not unreasonable.

**E**

In his fifth claim and sixth claims, Kelty argues that he was denied his right to present a defense when the trial court restricted the defense's ability to argue that there was an intervening, superseding cause of the victim's death and because the jury instruction regarding causation was improper. Respondent maintains that these claims are unexhausted and procedurally defaulted. The Court need not undertake

a procedural default analysis because procedural default is not a jurisdictional bar to review of the merits of Kelty's claims. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020). A district court may bypass a procedural default analysis "when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Id.* Here, the Court concludes it is more efficient for the Court to proceed directly to the merits of these claims.

The Court starts with Kelty's claim that the trial court wrongly prevented him from arguing about an intervening, superseding cause of the victim's death. But contrary to Kelty's assertion, his trial counsel *did* present a causation defense throughout the trial, maintaining that there was no proximate cause because the victim's reckless driving was an intervening, superseding cause of death. Moreover, the defense's expert witness supported this defense by describing the victim's failure to stop at a stop sign. In addition, Kelty's trial counsel cross-examined the prosecution's expert witness about the victim's driving and stressed the victim's failure to stop. Trial counsel then elicited additional testimony supporting the intervening cause defense from eyewitness Phillip Wimp, who testified that the motorcycle did not stop at the stop sign and that he did not see the motorcycle's brake light illuminate at any point. Finally, in closing, trial counsel focused almost exclusively on causation and argued that the victim's conduct was an unforeseeable intervening event that broke the chain of causation. Given this record, Kelty fails to

show that he was prevented from arguing there was an intervening cause of the victim's death.

The Court next turns to Kelty's argument that the court provided an improper jury instruction on causation. Kelty claims that the jury instructions did not adequately explain the element of causation because "the instructions as given were contrary to" the *Schaefer* and *Feezel* decisions discussed at length above. (*See* ECF No. 9, PageID.185.)

This claim fails for several reasons. First, to the extent that Kelty asserts that the state trial court erred under Michigan law, that claim is not cognizable on federal habeas review. A violation of state law does not justify federal habeas relief. *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000) (on habeas review, a federal court is bound to accept a state court's decision as to the adequacy of jury instructions under state law).

Second, the substance of the instructions Kelty argues should have been given was, in fact, given. The parties engaged in a lengthy colloquy with the trial court regarding the adequacy of the causation instruction. (*See* ECF No. 15-20, PageID.2000-2034.) Kelty's counsel argued for the addition of language explaining proximate causation and the concept of an intervening cause that supersedes a defendant's conduct in accordance with *Schaefer* and *Feezel*. That is essentially the same language that Kelty argues for in his petition. And ultimately the state trial

32

court concurred with Kelty's counsel and settled on a very detailed instruction regarding factual and proximate causation that relied heavily on the Michigan Supreme Court's decisions in *Schaefer and Feezel*. (*See* ECF No. 15-20, PageID.2046-2048.)   In other words, the trial court gave, in substance, the instructions requested by counsel at trial and by Kelty in his petition.

Finally, to the extent Kelty is claiming a due process violation based upon the jury instructions, his claim fails.  To show that a jury instruction violates due process, a habeas petitioner must demonstrate "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (citations omitted).  Obtaining federal habeas relief for a jury instruction claim is "a difficult hill to climb," and Kelty is unable to climb that hill here. *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020).  Simply put, for the reasons explained above, the Court cannot conclude that the instructions here violated Kelty's due process rights.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Kelty a certificate of appealability because jurists of reason could not debate the Court's conclusion that Kelty failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Kelty a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Kelty's claims, an appeal could be taken in good faith. Therefore, Kelty may proceed *in forma pauperis* on appeal.

**V**

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Court

**DENIES** the amended petition for writ of habeas corpus (ECF No. 9), **DENIES**

Kelty a certificate of appealability, and **GRANTS** Kelty leave to proceed *in forma*

*pauperis* on appeal because an appeal could be taken in good faith.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 26, 2024

I hereby certify that a copy of the foregoing document was served upon the
parties and/or counsel of record on September 26, 2024, by electronic means and/or
ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126o